Filed 8/28/14  In re C.R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re C.R. et al., Persons Coming Under the Juvenile Court Law. | B253325 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CRISTOBAL R.,<br><br>　　　　　Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK01427) |

Appeal from orders of the Superior Court of Los Angeles County.  Patricia S. Spear, Judge.  Affirmed.

Eva E. Chick, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Father Cristobal R. appeals from the juvenile court's orders at the December 2013 jurisdiction and disposition hearing declaring his two minor sons, Ch.R. and Ca.R., to be dependents pursuant to Welfare and Institutions Code section 300, subdivision (b)[1] and removing them from his custody. Father contends there is no substantial, credible evidence supporting either order. We are not persuaded and therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 1, 2013, two officers from the Los Angeles Police Department responded to father's apartment building, pursuant to a dispatch call that the apartment manager for the building had reported that father assaulted him. During their initial visit, the officers spoke with the apartment manager (Emilio Z.) but father could not be located on the premises. Emilio Z. explained he had asked father to turn down his music because other residents had complained, and father punched him twice on the side of his head. Emilio Z. also reported that residents of the building believed father sold narcotics from his apartment. The officers left and then returned to the building a couple of hours later in response to a second dispatch call, reporting father had committed another assault or made threats, and was back in his apartment.

The officers returned to the apartment building and spoke again with Emilio Z. They also spoke with Omar Z. who reported he had confronted father about his battery on Emilio Z. earlier in the day and an altercation ensued. Emilio Z. and Omar Z. directed the officers to apartment 964. As they approached the apartment, father was at the door and appeared to be leaving. When he saw the officers approaching, he stepped back inside and closed the metal screen door. He refused to come outside and told the officers "I am not opening the door for the police." Both Ch.R. (age 8) and Ca.R. (age 4), were standing next to father, "crying hysterically."

The officers made several attempts to persuade father to step outside peaceably. Father finally complied and came out with his two boys and the family dog. The police

---

[1] All further undesignated section references are to the Welfare and Institutions Code.

officers immediately detained father and advised he was being detained in connection with their investigation of the alleged battery complaint. A young woman, who told the officers her name was Ebony J., was also in the apartment. Father told her to take the dog back inside. She did so, and also opened the front door to the apartment and allowed the officers to come inside.

Ebony J. told the officers she lived in the apartment with father, and that she was concerned for the safety of the boys as there were narcotics and a gun inside the apartment. She took a jar from a lower kitchen cabinet containing a green leafy substance that appeared to be marijuana and handed it to the officers. The officers searched the apartment and found a second large jar of what appeared to be marijuana (also from inside a lower kitchen cabinet), a prescription pill bottle with the patient name of "Kevin Douglas," two baggies containing a crystal-like substance that appeared to methamphetamine, a pump action shotgun in a black case (from behind the bedroom door), several shotgun rounds and a loaded magazine, two boxes of handgun ammunition, two digital scales, and a black baton.

Ch.R. and Ca.R. are father's children with his former girlfriend, Lisa B. Following a telephone call by Ebony J., Lisa B. came to the apartment and picked up the boys. Father was taken to the police station to be booked.

Father was arrested on a charge of misdemeanor child endangerment. (Pen. Code, § 273a.) The arresting officers recommended additional charges be filed against father for battery, felon in possession of a firearm, and several drug possession charges. The police officers also referred the matter to the Los Angeles County Department of Children and Family Services.

A Department social worker interviewed Lisa B., the children's mother, as well as Ch.R. and Ca.R., at mother's home on September 10, 2013. Mother explained she does not know who Ebony J. is, but felt she was helpful in making sure mother knew to come pick up the boys and ensuring they were safe. Mother explained the boys lived with her but there was a family court order, in effect since December 2012, allowing father visitation with the boys on the first, third and fifth weekends of each month. Mother said

she was distressed by the events of September 1 and had gone back to family court to obtain a temporary emergency order which precluded any visitation with father pending the juvenile court hearing.

Mother told the social worker she believed that after father was released from custody, he was arrested again for assaulting or threatening Ebony J. Father had called mother after his release and was yelling and threatening her over the phone, and she could hear him yelling at another woman in the background who she believed to be Ebony J. The social worker completed an inmate locator search which indicated father was arrested on September 1, released on September 5, was re-arrested approximately five hours later for making criminal threats, and then was released again on September 10, 2013.

Mother denied father ever physically hit her, but she said he did throw things and yelled a lot. Mother said she had no idea what was going on at father's house, but she knew him to have a long history of drug use, arrests and violent behavior.

Both of the boys denied any abuse by father or mother and appeared "clean, healthy and well-groomed." The younger boy, Ca.R., did not appear to understand what drugs were. His responses to the social worker were somewhat incoherent, but he did appear to confirm seeing "a gun in daddy's bag." Ch.R., the older boy, denied ever seeing any guns or drugs, and said he liked visiting his dad's apartment on the weekends, and missed his dog that lived there.

When father was interviewed by the social worker on September 17, he reported the district attorney was not going to be filing any charges against him. As for the battery, he admitted "I socked him," but claimed it was self-defense after he got into an argument with the victim over threats to turn off the electricity to his apartment. As for the gun and drugs, father said the police searched the "wrong apartment." He said he lived at apartment 964 and that is where the police found him and arrested him, but they apparently searched 968, as reflected in their reports. Father denied owning or having any firearms or illegal drugs in his home, and claimed Ebony J. "found the apartment building keys on the ground" and let the police into apartment 968, instead of 964 where

4

he actually lived. Father said Ebony J. was a girl he had known only briefly, and she had stayed at his apartment a couple of days but did not live there.

Father admitted he used to be addicted to crack cocaine and that he has a long history of drug-related criminal offenses. But, he said he does not currently use illegal drugs and agreed to drug testing. Father also explained he was diagnosed with bipolar disorder but is not currently on any medication or receiving any mental health treatment.

The Department filed a petition pursuant to section 300, subdivision (b). The Department alleged father had created a "detrimental and endangering home environment" for the boys by allowing illicit drugs, a shotgun and ammunition to be in the home, within easy access of both children, thus placing them at substantial risk of harm. The Department also alleged, in a separate count (paragraph b-2), that father suffered from mental and emotional problems, including bipolar disorder, which rendered father incapable of providing proper care and supervision of the boys.

At the detention hearing on September 20, 2013, the juvenile court found mother was nonoffending, the Indian Child Welfare Act did not apply, and father was the presumed father. The court further found a prima facie case to detain both Ch.R. and Ca.R. pursuant to section 300, subdivision (b), and to remove the boys from father's custody. The boys were released to mother. Father was allowed monitored visitation twice weekly.

In the jurisdiction and disposition report, Dana Wilson, the dependency investigator (DI), reported that father's monitored visitation with the boys had gone well since the detention hearing. Both father and mother were cooperative with the Department. But, DI Wilson stated that father "does not seem to be forthcoming regarding the illegal activity in his home."

Father reported he filed an administrative complaint with the Los Angeles Police Department regarding his false arrest on September 1, 2013. Father also provided DI Wilson with paperwork, including a letter from the district attorney declining to file a case against him for the September 1 incident, a mental health assessment form dated September 26, 2013, describing father as presently stable and not in need of medication,

5

and a certificate of completion from the Los Angeles Transitional Center for a drug and alcohol program. Father explained he had been sober since 2007 when he completed the drug rehabilitation program. Father said he did smoke medical marijuana pursuant to a valid prescription, but denied he sold or took any illicit drugs. He again denied owning any firearms.

Father also said he had enrolled voluntarily in a parenting class and individual counseling. Father believes he is a good parent, and he thinks mother is also a good parent who takes good care of the boys.

Mother said she was extremely worried about the situation, and just wanted her children to be safe. She said she believed father normally took good care of the children when they visited, but she did not know everything about "his personal life." Mother said father has anger management issues and the "situation scare[s] her." Mother believes the children are "very attached" to father.

DI Wilson spoke to the deputy district attorney regarding the criminal charges filed against father, who advised that because the police officers had not obtained a search warrant for the apartment, it was determined the illegal drugs and shotgun would not be admissible and therefore the charges had to be dismissed.

In a last minute information form filed with the court, the Department reported that father had called the social worker to express his "dissatisfaction" with the jurisdiction and disposition report. Father reiterated his concern that no one had investigated the fact that police identified two different addresses as his apartment, including 968½, which does not even exist as an apartment address at his building. Father stated he never put his boys in danger and would never do so and just wanted his boys back.

Father filed written objections to the hearsay statements contained in the Department's reports.

The combined jurisdiction and disposition hearing proceeded on December 12, 2013. At the beginning of the hearing, the court admitted the Department reports, which

6

included, among other documents, copies of the arrest report for the September 1 incident, and the property report related to the items recovered and taken into evidence.

Father testified. He stated he lived in apartment 964, not 968 or 968½, and unequivocally testified he was in apartment 964 when the police officers arrived and that was the location where he was arrested. Father said he initially refused to come out to speak with the officers because his boys were in the apartment. He said he assumed the officers were there because of the punching incident, and he was contacting mother so she could pick up the boys. Father said they were "already freaking out" because the officers had been "banging and yelling" so he wanted to make sure mother got them away from the situation.

Father said he did not see the officers enter his apartment, or see what apartment they went into, because as soon as he went outside, the police handcuffed him and placed him in their patrol car. He said a mother and son live in apartment 968, and he does not have keys or access to that apartment. Father verified copies of various documents identifying his residential address as apartment 964, including a cable bill, his car registration, a Medi-Cal document, his rental agreement, and a notice from the Los Angeles County Department of Public Social Services. The documents were admitted as evidence, along with several photographs father produced showing the front entrance gates at his apartment building.

Father admitted he had been diagnosed in prison in 1992 as suffering from bipolar disorder, but testified he had not been on medication for years and had recently been assessed as stable and not in need of medication. Father also testified he did not own any guns, never let his boys have access to firearms, and never used drugs around them.

Following argument by all counsel, the court dismissed the paragraph b-2 allegation (father's mental health/failure to supervise) in the interests of justice. Finding a preponderance of evidence supported the determination that the shotgun and illegal drugs were recovered from father's residence, the court sustained these allegations: "On 09/03/2013 and on prior occasions, [father] created a detrimental and endangering home environment for the children in that methamphetamine, marijuana, a firearm and

7

ammunition were found in the children's home, within access of the children. Such a detrimental and endangering home environment established for the children by the father endangers the children's physical health and safety, creates a detrimental home environment and places the children at risk of physical harm, damage and danger."

The court further found that clear and convincing evidence supported removal of Ch.R. and Ca.R. from father's custody. The boys were placed with mother, who was nonoffending and willing to submit to the court's jurisdiction. The Department was ordered to provide mother with assistance, including transportation assistance with respect to the monitored visitation for father and counseling for the children. Father was ordered to have monitored visitation with a Department-approved monitor, and the Department was granted discretion to liberalize visitation. Father was also ordered to complete anger management and parenting courses, as well as individual counseling. The Department was to investigate whether the programs father had voluntarily initiated were Department-approved programs. The court ordered, with father's express consent on the record, that the social worker could make unannounced visits at father's residence to determine whether any drugs or guns were in the home.

This appeal by father followed.

## DISCUSSION

### 1. The Jurisdiction Order

Father contends there is insufficient evidence supporting the court's assertion of jurisdiction over his two minor sons. "The standard of proof at the jurisdictional stage of a dependency proceeding is a preponderance of the evidence, and we will affirm the court's findings if they are supported by substantial evidence." (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438; accord, *In re I.J.* (2013) 56 Cal.4th 766, 773 [" ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' "]; and *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) The record supports the juvenile court's assertion of jurisdiction pursuant to section 300, subdivision (b).

Section 300, subdivision (b)(1) allows a court to assert dependency jurisdiction over a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." As the Supreme Court recently explained, "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' [Citation.]" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

Creating a home environment in which a four-year-old and an eight-year-old have ready access to a loaded shotgun, as well as illegal drugs, falls well within the purview of section 300, subdivision (b). Because of the conditions in father's home, both boys were placed at risk of serious harm, including, but not limited to, the possible misuse of a firearm or the ingestion of illicit drugs. (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 825-826 [juvenile court entitled to infer that child 11 years of age is subjected to substantial risk of harm when placed in a home environment allowing access to drugs].)

Father primarily contends there was no credible evidence the gun, ammunition and illegal drugs were found in his residence because the police reported they were found in apartment number 968 or 968½, *not* 964 where he lived, including the consent form signed by Ebony J. to search the apartment, and one page of the narrative portion of the arrest report. But, the first page of the arrest report, the property report and the receipt for property taken into custody form *all identify apartment 964 as the location of the arrest and the apartment in which the items were recovered by the officers*. The different addresses in the police reports are immaterial, in view of the undisputed facts, which are these: The evidence showed the manager called police to report father had battered him; police responded; father initially refused to open the door, then did so, and was arrested

9

and taken into custody. In addition to the children, a woman named Ebony J. was in the apartment, and the children were hysterical. Ebony J. permitted the officers to enter and signed a consent to search. She also told the police that father was a drug dealer, and the police found the contraband. The district attorney declined to prosecute only because father did not consent to the search, and there was no search warrant. It is also undisputed that father was a drug addict in the past and has a long history of drug-related felonies and incarcerations. Regardless of whether the gun and drugs belonged to father, it is undisputed father punched the manager, resulting in a police response, and he was taken into custody from an apartment in which he resided and where the children visited him, and where the contraband was found, most of it within easy reach of the children. Father's arguments that there was no evidence he knew there was contraband simply ask us to reweigh the evidence by accepting his denial as true and ignoring all the contrary evidence.

The juvenile court reasonably rejected as implausible father's explanation for how the officers purportedly gained access to, and searched, apartment 968, instead of 964. Father initially told the social worker that Ebony J. found the apartment building keys lying on the ground and let the officers into apartment 968. Father did not repeat this claim during the adjudication hearing, and offered no alternative explanation for how the officers would have gained access to the apartment of another tenant.

Relying on *In re J.N.* (2010) 181 Cal.App.4th 1010, father also argues that even if the gun and drugs were in his home, the circumstances presented a "one-time incident" that did not support the assertion of jurisdiction. The facts below are nothing like *In re J.N.* There, a mother and father were involved in one incident of driving under the influence with their minor children in the car. While all parties agreed the incident was serious and resulted in a car accident, there was no evidence either parent had a history of alcohol abuse, both parents exhibited extreme remorse for the occurrence and cooperated with programs, and there was no other evidence of neglect or abuse. On such a record, the court reversed the juvenile court's exercise of jurisdiction over the minor children. (*Id.* at pp. 1022-1027.)

10

In reversing the jurisdictional findings, *In re J.N.* explained "[i]n evaluating risk based upon a single episode of endangering conduct, a juvenile court *should consider the nature of the conduct and all surrounding circumstances*. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a parent avoid a recurrence of such an incident. *The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances.*" (*In re J.N.*, *supra*, 181 Cal.App.4th at pp. 1025-1026, italics added.)

Even if it were fair to characterize the facts here as presenting a "one-time situation" (and we do not), *In re J.N.* supports the court's exercise of jurisdiction. Given the totality of the circumstances presented below, a preponderance of evidence supported the court's finding the boys were at substantial risk of injury in father's home. In addition to the shotgun, ammunition and illegal drugs kept in areas easily accessible to both boys, there was the statement from Ca.R. confirming "a gun in daddy's bag"; mother's reports of father's volatile behavior, and propensity to act out in anger, yell and make verbal threats; father's admission that on the day of his arrest he had in fact punched a man in the face; the reports by Emilio Z. and Omar Z. that father had exhibited hostile and assaultive behavior with both of them; and father's admitted past history of drug abuse.[2] Moreover, father's apparent lack of insight into the problems he allowed to

---

[2]     To the extent some of the evidence came from hearsay statements in the Department's reports, father's written objections did not render such evidence inadmissible. The statements could be considered by the court in conjunction with other legally admissible, corroborative evidence. (§ 355; see also *In re Christian P.* (2012) 207 Cal.App.4th 1266, 1277-1278; *In re B.D.* (2007) 156 Cal.App.4th 975, 984 [timely objections do not render hearsay statements inadmissible, rather the uncorroborated

exist in his home (evidenced by his continued denial of ownership of the gun and drugs without any plausible explanation for their discovery in his home), provided further support for the potential of future risk. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

**2.      The Removal Order**

Father contends the court's order removing the children from his custody is also not supported by substantial evidence. In examining father's claim, "we review the record in the light most favorable to the dependency court's order to determine whether it contains sufficient evidence from which a reasonable trier of fact could make the necessary findings by clear and convincing evidence." (*In re Mariah T.*, *supra*, 159 Cal.App.4th at p. 441; accord, *In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193.) Given the evidence discussed above, the record contains substantial evidence in support of the court's removal order.

**DISPOSITION**

The juvenile court's jurisdiction and disposition orders are affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.

FLIER, J.

---

hearsay statements do not constitute substantial evidence and cannot form the *exclusive* basis for finding jurisdiction under section 300].)