Filed 11/4/14  In re Christina C. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CHRISTINA C., a Person Coming Under the Juvenile Court Law. | B253530 (Los Angeles County Super. Ct. No. CK74844) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M. C., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Annabelle G. Cortez, Judge.  Affirmed.

Kimberly A. Knill, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Navid Nakhjavani, for Plaintiff and Respondent.

_____

M.C. (father) appeals from the juvenile court's jurisdictional and dispositional orders regarding Christina C. (minor). He contends that the orders should be reversed because (1) his one-time time striking of the minor's clothed leg with a folded belt was an exercise of his parental right to impose reasonable discipline and does not support dependency jurisdiction under Welfare and Institutions Code section 300, subdivision (b),[1] and (2) even if jurisdiction was proper, the minor should not have been removed from his custody.

We find no error and affirm.

**FACTS**

*Background*

The minor was born in September 1999. She is the daughter of father and Emily L. (mother). The parents have two other daughters, Samantha C. (Samantha) and Y.C. (Y.).[2]

In mid-2010, the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition that alleged: Father struck the minor and Samantha with an open hand on their arms, face and heads. On one occasion when Samantha was being disciplined by father, she took a step back onto a broken dresser drawer and cut her foot. This inappropriate discipline placed the minors at risk of physical and emotional harm.[3]

The juvenile court sustained the petition.

---

[1]    All further statutory references are to the Welfare and Institution Code unless otherwise indicated.

[2]    Y. and Samantha are not subjects of this appeal. Collectively, the minor, Y. and Samantha are referred to as the minors.

[3]    Previously, in mid-2008, the Department substantiated a report that the minors were at substantial risk of abuse by mother and father. That report was not a basis for the 2010 petition.

2

In early 2011, the Department received a referral that father emotionally abused the minor and Samantha, and physically abused the minor. The only substantiated allegation was that father would raise his hand and threaten to hit the minor if she refused to answer his questions about mother. About a year later, there was a substantiated allegation that father was an absent caretaker.

On February 7, 2012, the minor was removed from father's custody. The Department filed a section 387 petition alleging father abused the minor by striking her in the face with his fists, and that father was unwilling or unable to provide parental care and supervision for the minor.

In September 2012, the juvenile court terminated jurisdiction as to Samantha and Y.. Subsequently, the minor was released to father's custody. Less than a month later, the juvenile court terminated reunification services for mother. Then, on October 21, 2013, the juvenile court signed a family law order giving mother and father joint legal and physical custody of the minor, and specifying that her primary residence would be with father.[4]

*The present dependency case*

A Los Angeles Police Department officer generated a report indicating that he and his partner responded to a November 14, 2013, radio call regarding child abuse at father's home. According to the report: "[A]t approximately 2100 hours, [the minor] was sitting on the couch in the living room when her father came in yelling at her about her consistent tardiness at school. [The minor] started talking back to [father,] so he took his belt off and hit her between 5-10 times on her right leg with his leather belt." The minor told the officers that father "does not really discipline her at all but occasionally he will take away her television privileges or slap her on the her head. She stated that . . . last time [father] hit [her] was approximately 6 months ago when he slapped her on her face."

---

[4] From 2005 through 2013, the Department received numerous referrals regarding mother's physical abuse of the minors. Some of the allegations were substantiated, some were not. The Department's 2010 petition contained allegations against mother as well as father.

3

A social worker interviewed the minor. She reported that father hit her on the arm and leg with a folded leather belt. When father was interviewed by phone, he denied the allegations and stated that any marks on the minor were due to accidental falls she might have had while she was at school. Days later, a social worker learned that father asked the minor to tell the juvenile court that her injuries and bruises were caused by her own horseplay.

On November 19, 2013, the Department filed a new section 300 petition on behalf of the minor. It alleged the following: "On 11/12/2013, [the minor's] father . . . physically abused the [minor] by striking [her] leg with a belt, inflicting bruises to [her] leg. Such physical abuse was excessive and caused the [minor] unreasonable pain and suffering. The [minor] was a prior dependent of the Juvenile Court due to the father's physical abuse of the [minor]. Such physical abuse of the [minor] by the father endangers the [minor's] physical health and safety, and places the [minor] at risk of physical harm, danger and physical abuse." These allegations supported counts under both subdivisions (a) and (b) of section 300.

In November 2013, the minor was detained and placed in shelter care. Father was granted monitored visitation.

Prior to the jurisdiction/disposition hearing, the Department reported that father was interviewed. He stated that he gave the minor "two strikes with a belt over her clothes" because she came home late. Rosa L., father's girlfriend, said she was told by the minor that she got a bruise on her leg playing "futbol." When interviewed, the minor said father hit her with a folded belt two or three times over her sweat pants, and it caused a bruise. Asked about whether she got the bruise playing soccer, she said, "I had a bruise somewhere right here and I told my dad he made it worse. I think I . . . [fell] on the stairs at school." She added, "I used to play soccer. I had stopped playing. I did have bruises on my leg." She pointed to her shins as the area where she had bruises. Regarding the day father hit her with his belt, she said he "just went crazy."

At the December 17, 2013, hearing, the juvenile court received into evidence, inter alia, several photographs depicting bruises on the minor's thigh and inner thigh.

Counsel for the Department noted that the photographs showed "distinct bruising that looked to be . . . a linear belt mark on [the minor's] legs." According to counsel, this was not a one-time incident. The parents had been before the juvenile court before, and father had taken numerous classes to learn how to punish the minor in an appropriate fashion. Nonetheless, father continued to physically abuse the minor. As a result, she was at risk of harm.

In response, father's counsel argued that the evidence showed that father had done nothing more than exercise his parental right to use reasonable corporal punishment. Counsel acknowledged that the minor had a "big bruise," but then stated, "I don't believe that a bruise in and of itself provides evidence . . . that the [minor] has suffered serious physical harm." According to father's counsel, this was a one-time incident.

The juvenile court upheld the petition and pronounced that the minor was a person described by section 300 subdivisions (a) and (b). To explain its decision, the juvenile court stated: "The father acknowledges that he used a belt. There is no dispute that he hit [the minor]. . . . [¶] It's the father who is the adult in this relationship. [¶] The one who is suppose[d] to be using methods to discipline his daughter without resorting to physical abuse. [¶] The court does not agree with father's argument concerning reasonable discipline[,] and the [juvenile court] again notes there's a long history" as well as a prior sustained petition.

The minor was removed from parental custody.

This timely appeal followed.

## DISCUSSION

Father challenges the sufficiency of the evidence to support the jurisdictional and dispositional orders. This triggers the substantial evidence test. (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258; *In re Henry V.* (2004) 119 Cal.App.4th 522, 529 [even though a child cannot be removed absent clear and convincing evidence to support the order, such an order is nonetheless reviewed under the substantial evidence test by an appellate court].)

5

## I. The Jurisdictional Order.

According to father, the evidence does not support dependency jurisdiction pursuant to section 300, subdivision (b). But whether the evidence is sufficient to support jurisdiction under subdivision (b) is moot because father does not challenge jurisdiction under subdivision (a). (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"].) Because jurisdiction under section 300, subdivision (a) is not challenged, we presume that jurisdiction is appropriate.

Even if father had challenged jurisdiction under section 300, subdivision (a), we would find no basis to reverse.

Section 300, subdivision (a) authorizes jurisdiction when a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." It then provides: "For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury." (§ 300, subd. (a).)

Evidence of prior serious harm satisfies jurisdiction under section 300, subdivision (a). (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1434–1435.) Though the statute does not define the concept of "serious physical harm," courts have concluded that the statute need not be more specific because parents of common intelligence can discern what falls within its scope. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438; *In re Isabella F.* (2014) 226 Cal.App.4th 128, 139.) In our view, parents of common intelligence would recognize that the minor suffered serious physical harm when father hit her hard enough on the thigh and inner thigh with a belt to cause bruising.

6

Even if the bruising did not qualify as serious physical harm, jurisdiction was justified because there was a risk of such harm in the future because father had a history of hitting the minor, he initially denied that he hit her with a belt and caused bruising, he asked her to cover up the abuse, and he now contends that hitting her with a belt constitutes reasonable corporal punishment.

Father, of course, maintains he was acting pursuant to his parental right to mete out reasonable discipline, and therefore jurisdiction is improper. But section 300, subdivision (a) only protects a parent's use of age-appropriate spanking to the buttocks that does not cause serious physical injury. In other words, the statute does not protect a parent when he strikes a minor on the leg with a belt, or when he otherwise inflicts serious physical injury.

This brings us to *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72 (*Gonzalez*), a case father cites to defend his actions. The issue in *Gonzalez* was whether a report was properly submitted to the Child Abuse Central Index under the Child Abuse and Neglect Reporting Act based on evidence that a mother spanked her 12-year-old daughter with a wooden spoon with enough force to produce visible bruises. (*Gonzalez, supra,* at p. 75.) The court noted that a parent has a right to reasonably discipline a child, and she may administer reasonable punishment without being held criminally or civilly liable. (*Id.* at p. 86.) Also, statute indicates that reasonable parental discipline is not reportable. (*Id.* at p. 87.) *Gonzalez* has no application in a dependency case. Even if it did, father's attempt to analogize to *Gonzalez* would fail because it involved spanking, not hitting a leg. The court stated, "We cannot say that the use of a wooden spoon to administer a spanking necessarily exceeds the bounds of reasonable parental discipline. Although no published California decision addresses this issue, the Attorney General has concluded that '[i]t is not unlawful for a parent to spank a child for disciplinary purposes with an object other than the hand . . . ,' provided that 'the punishment [is] necessary and not excessive in relation

to the individual circumstances.' [Citation.]" (*Id*. at p. 92.) While spanking a child with an object might be acceptable, hitting a child on the leg with a belt is not.[5]

## II. The Dispositional Order.

Statute provides, inter alia, that a "dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence [that] . . . . (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).) Per case law, "[t]he parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances. [Citation.]" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

According to father, *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 284 (*Jasmine G.*) dictates reversal of the removal order. We disagree.

In *Jasmine G.*, the parents were law-abiding citizens with no alcohol or drug dependencies, and no prior encounters with the juvenile dependency system. They were very strict. Mother used a switch on their 15-year-old daughter because she invited a boy into the home in violation of house rules. For the same incident, the father used a thin belt to strike their daughter across the buttocks and upper back part of her legs. Two days later, the mother used a switch to discipline their daughter for failing to wash the dishes. These incidents left marks, which prompted the county's social services agency to file a petition to declare the daughter a dependent child. She was detained. The parents went

---

[5] Father argues that the juvenile court did not consider his right to impose reasonable discipline. That contention is belied by the record. The juvenile court specifically found that the discipline meted out by father—striking the minor on the legs with a belt—was not reasonable.

to see a therapist and stipulated to jurisdiction.  They each completed a parenting course.  At the dispositional hearing, the parents testified that "they had changed their attitudes toward corporal punishment for teenagers and expressed remorse that their physical abuse of their daughter had led to the dependency.  [The daughter's] therapist testified that [the daughter] had no anger toward, or 'fear' of, either parent.  [The daughter] herself testified that she wanted to go back to either her mother's or her father's house.  [The daughter] believed that her mother had 'learned from this whole thing' and didn't believe her mother would 'hit [her] again.'  She also, however, testified that at various times she had been disciplined by [the mother] 'in anger' and had been 'slapped' by her.  The parent's therapist stated that [the daughter] was in no 'danger' if she were returned to one of the parents, and noted that the parents had each expressed remorse and had the 'motivation to change their former forms of discipline.'"  (*Jasmine G., supra,* 82 Cal.App.4th at p. 286, fn. omitted.)  A social worker expressed her opinion that the daughter should be removed because the parents seemed to lack an understanding of their responsibility and their roles in the incident that led to the dependency case.  Also, the social worker said the parents had been hostile and uncooperative, and she was concerned about undisclosed difficulties between father and his new wife.  The trial court removed the daughter.  (*Jasmine G.*, *supra*, at pp. 285–288.)  The mother challenged that order on appeal.

The *Jasmine G.* court held that the social worker's belief about the parents' internalization of parenting skills and their attitudes toward social service intervention were insufficient to support removal.  (*Jasmine G.*, *supra*, 82 Cal.App.4th at p. 288.)  Even though the father did not appeal, the court stated that there was no basis not to return the daughter to him.  The dispositional order was reversed for further proceedings.  (*Id*. at pp. 292–293.)

The court's holding does not aid father in the case at bar because the removal of the minor here was based on a different history and set of facts. Unlike the parents in *Jasmine G.*, father has prior experience with the dependency system, and he has not professed remorse or stated that he has changed his opinion about how to discipline the minor. Moreover, he has a history of physically abusing the minor, and when the most recent incident was reported, he denied that it happened and tried to coerce the minor into lying to the authorities about it. We are satisfied that the evidence showed a substantial risk danger of physical harm if the minor was not removed from father's custody, and that there were no reasonable alternatives.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
HOFFSTADT

10