Filed 12/23/14  In re D.R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re D.R. et al., Persons Coming Under the Juvenile Court Law. | B255658 (Los Angeles County Super. Ct. No. DK02137) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DANIELLE H., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Julie Fox Blackshaw, Judge.  Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Danielle H. (mother) appeals from the juvenile court's jurisdictional order pertaining to her two children, son D.R. (born in Dec. 2000) and daughter Dai. R. (born in Feb. 2003) (the minors). Mother contends that her use of illegal drugs did not place the minors at substantial risk of harm. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**Facts Leading to Detention**

The family came to the attention of the Los Angeles County Department of Children and Family Services (Department) on July 3, 2013, when the Department received a referral that mother was a "'meth addict'" and was "high" two days earlier. On July 5, 2013, mother tested positive for amphetamine, methamphetamine and marijuana. At a team decision making meeting on July 12, 2013, mother stated that she was willing to change her surroundings and stop partying, and that she had already enrolled in a drug treatment program at the Lighthouse Drug Treatment Program (Lighthouse). She was willing to start drug treatment and undergo random drug testing. The Department recommended voluntary family maintenance (VFM) services.

Mother failed to submit to random drug testing on September 11 and 18, 2013. On September 20, 2013, mother told the social worker that she was no longer enrolled at Lighthouse due to her noncompliance. Mother was referred to and enrolled in another drug program.

On October 15, 2013, the social worker interviewed mother and the minors at their home. The minors denied seeing mother under the influence of drugs or alcohol, stated they were comfortable in mother's care, and did not express any issues or concerns.

Mother admitted using marijuana, but denied using methamphetamine. She told the social worker: "'I'm hanging out with the same people I was before, when this case opened. I had a couple of drinks. I think this man who I started partying with again, I think he is putting something in my drinks. This is just crazy[,] I don't use Meth. I do smoke marijuana but never would I use Meth. I do smoke other people[']s weed, maybe that man is lacing my joint with something. Maybe he is lacing it with meth."

On September 20, 2013, and October 15, 2013, mother tested positive for amphetamine, methamphetamine and marijuana.

The Department learned that mother has a criminal history, which includes a 2009 felony conviction for possession of a controlled substance. Mother was sentenced to 12 months of probation, and one of the conditions of her probation was "drug treatment placement."

On October 28, 2013, the juvenile court granted the Department a warrant to detain the minors, who were placed with their paternal grandmother.

**The Petition**

On November 5, 2013, the Department filed a petition on behalf of the minors under Welfare and Institutions Code, section 300, subdivision (b),[1] alleging that mother has a history of substance abuse and is a current user of amphetamine, methamphetamine and marijuana, which renders her incapable of providing regular care for the minors, and that her substance abuse endangers the minors' physical health and safety and creates a detrimental home environment, placing the minors at risk of physical harm.

**Detention Hearing**

The juvenile court conducted the detention hearing on November 5, 2013. Mother and the minors were present, as was the minors' father, Byron R. (father). (Father is not a party to this appeal.) The court ordered that the minors remain placed with the paternal grandmother. It also ordered the Department to provide the parents with family reunification services. Mother was ordered to participate in a drug treatment program with random testing, and her visits with the minors were to be monitored.

**Jurisdiction/Disposition Report**

In its December 12, 2013, jurisdiction/disposition report the Department reported that it interviewed mother on December 3, 2013. Mother denied missing drug tests on September 11 and 18, 2013; she stated that she went to test but was unable to use the bathroom the first time and did not produce enough urine the second time. She had no

---

[1]      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

explanation for her positive tests. She stated: "Anything I do I don't do in front of my kids. I party but I don't put my kids in harm[']s way. I don't do drugs in my house or in front of my kids. My kids have never seen me do drugs or be high. I don't lay up with men in my house. I don't disrespect my kids like that. Monday through Friday I am a mom. But on the weekends when my kids are with their dad or their grandmother, I party. I don't party at my house or around my kids."

Mother stated that she started smoking marijuana recreationally when she was 16 years old and uses it medically to treat back problems and carpal tunnel syndrome. She possessed a medical marijuana card with an expiration date in February 2014. Mother has never been formally employed; she has been styling hair since she was 12 years old and earns money to supplement the public assistance she receives for the minors.

The minors reported that they liked living with their grandmother. They appeared to be developing age appropriately and had no noted mental or emotional problems. Mother maintained consistent visitation and contact with the minors.

**The Jurisdiction Hearing**

The juvenile court conducted the jurisdiction hearing on December 18, 2013. The parties were represented by their counsel. Following oral argument, the court sustained the section 300 petition as pled, ordered the minors to remain placed with the paternal grandmother, and continued the matter for disposition.

**Last Minute Information**

In a last minute information report filed on March 18, 2014, the Department reported that it was unable to approve the paternal grandmother for placement due to her lengthy criminal history, which includes felony convictions for burglary, robbery, battery, possession of a controlled substance, violation of parole and dissuading a witness with threats of force. Father had moved into the grandmother's house to keep the minors from being displaced from their home and school, and mother was in agreement with the living arrangement. Mother reported that she had reenrolled at Lighthouse, but the phone numbers she provided for the Lighthouse were not working, and mother had failed to

4

provide proof of enrollment.  Mother acknowledged that she was not drug testing for the Department, which could not confirm her claim that she was testing at Lighthouse.

**Disposition Hearing**

The juvenile court conducted the disposition hearing on March 18, 2014.  Mother, father and the minors were present.  Minors' counsel agreed with the Department that returning the minors to mother would be detrimental to them.  The court ordered the minors to be placed with father; that family maintenance services be provided to father and enhancement services be provided to mother; that mother participate in a drug and alcohol program, a parenting class and individual counseling; and that mother be accorded unmonitored visits after five clean and consecutive drug tests.

## DISCUSSION

**I.  Section 300**

The juvenile court assumed jurisdiction of the minors under section 300, subdivision (b).  A child comes within the jurisdiction of the juvenile court under section 300, subdivision (b), if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

In enacting section 300, the Legislature intended to protect children who are currently being abused or neglected "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  (§ 300.2.)  The Legislature acknowledged that the "provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  (§ 300.2.)

We review a juvenile court's jurisdictional findings for substantial evidence.  (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438.)

## II. Substantial Evidence Supports the Jurisdictional Finding

Mother describes herself as a "recreational" drug user. She argues that while she *used* illegal drugs, including methamphetamine and marijuana, there is no evidence that she *abused* such drugs and placed the minors at substantial risk of physical harm. We disagree.

Substantial evidence supports the jurisdictional finding that mother abused illegal drugs. In 2009, mother had a felony conviction for possession of a controlled substance and was ordered into a drug treatment placement as a condition of her probation. Yet, four years later, mother was still using amphetamine, methamphetamine and marijuana, despite being aware of the serious criminal consequences.

Mother also continued to use drugs after the Department offered her VFM services. The juvenile court noted that during the VFM period, mother had "gone in and out of sobriety" and continued "to fail in her program," which it found constituted one of the definitions of addiction.

Mother also denied taking methamphetamine, including on one of the days that she tested positive for methamphetamine (Oct. 15, 2013). She told the social worker that she did not know how she ingested methamphetamine and claimed that someone must have slipped it in her drinks or marijuana joints. As the juvenile court aptly noted, "[i]f she doesn't even know where she gets the meth, and she has the meth in her system, that doesn't make me feel that this is just recreational."

Mother also told the social worker that she did not party or use drugs during the week when the minors were in her care and custody. But at least two of mother's positive drug tests occurred during the week (Fri., Sept. 20, 2013, & Tue., Oct. 15, 2013), and mother failed to test on September 11 and 18, 2013 (both Weds.). The juvenile court properly found "a risk here for somebody who uses drugs that can't explain when they ingested the drugs, how they ingested the drugs, and lies about it to the social worker, does ingest during the week. As a result of the tests, the court does see that this poses a risk to the children."

6

Mother nevertheless argues that her drug use did not place the minors at substantial risk of physical harm. But as the Department notes: "Although it is true that mother appeared to have met the children's needs, the juvenile court was rightfully concerned that mother's inability to remember or articulate how the methamphetamine got into her system, combined with the fact that she tested positive on weekdays when she reported the children were in her care, established that her use was risky and put her children at substantial risk of harm." As our Supreme Court recently stated: "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected. . . . 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

We are satisfied that substantial evidence supports the juvenile court's jurisdictional finding that mother's substance abuse places the minors at substantial risk of physical harm.

## DISPOSITION

The jurisdictional order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
          ASHMANN-GERST

We concur:


_____, P. J.
      BOREN


_____, J.
      CHAVEZ