Filed 6/24/15  In re T.K. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re T.K. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.H.,<br><br>    Defendant and Appellant. | E062338<br><br>(Super.Ct.Nos. J256202 & J256203 & J256204 & J256205)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

To punish her daughter, E.K, for getting in trouble at school, defendant and appellant S.H. (mother) hit E.K. several times with a belt, inflicting welts and lacerations on E.K.'s arms and legs. The juvenile court found that E.K. suffered serious physical harm under Welfare and Institutions Code[1] section 300, subdivision (a), and that E.K.'s siblings were at a substantial risk of similar abuse under section 300, subdivision (j). On appeal, mother challenges the court's jurisdictional findings, arguing that there was insufficient evidence that E.K. suffered serious physical harm. We affirm.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

1.    *Detention*

Mother and her children, E.K. (born May 2001), T.K. (a girl, born November 2004), N.K (a boy, born November 1999), and M.K. (a girl, born December 1998) lived in Fort Irwin.[2] On August 28, 2014, E.K. arrived at the Fort Irwin Military Police Station to report an incident of physical abuse. She told the military police that her mother had hit her several times with a belt. Sheriff's deputies were called; they in turn called San Bernardino County Children and Family Services (CFS). The social worker noted that E.K. had "sustained numerous welts and lacerations from the leather part of the belt and from the metal buckle."

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother's oldest child, A.K. (a girl, born March 1997) is not a subject of this dependency matter; the children's fathers are not parties to the appeal.

During her interview with the social worker, E.K. reported that her school had called mother to inform her that E.K. had been yelling at another student. When E.K. returned home from school that afternoon, mother slapped her across the face twice and told her younger sister, T.K. to "go get a belt." When T.K. returned with a belt, mother told her to get a different one. E.K. told the social worker that mother hit her with the belt five or six times. A deputy showed the social worker pictures the military police had taken of E.K.'s injuries. The social worker opined that the photos showed "more than [that] number of welts and lacerations." The social worker observed that while the majority of those welts had gone down in the six hours since the photographs were taken, E.K. still had "several" lacerations on her arms and legs.

Mother was arrested for willful cruelty to a child. The social worker interviewed mother while she was in custody. Mother stated that E.K. had been the aggressor. According to mother, she had asked T.K. to get a belt in response to E.K. pulling mother's hair and hitting her. She had used the belts to "[fight] back against [E.K.]."

The social worker also interviewed E.K.'s siblings. T.K., E.K.'s younger sister, confirmed that mother had asked T.K. to get a belt, but she said she did not see what happened afterward. E.K.'s siblings told the social worker that when they get in trouble they " 'get their butts beat,' " and that sometimes mother used a belt to hit them. The children denied receiving any injuries from these beatings.

At the detention hearing, the juvenile court found a prima facie basis for detaining the children.

2.    *Jurisdiction and disposition*

In the months leading up to the contested jurisdiction hearing, the children had unsupervised weekend visits with mother and CPS changed its recommendation from removal to return to mother's care, with family maintenance services. The children reported to the social worker that they wanted to return to mother's care and that they missed their friends and school.

At the hearing, the court heard testimony from mother, E.K., and T.K. Mother denied that she ever hit E.K. with a belt or that she had ever hit any of her children in the past. She testified that, on the day of the incident, she had pushed E.K. away to defend herself from E.K.'s attack.

E.K. also denied that her mother had hit her with a belt or slapped her in the face. She testified that she had pulled mother's hair and punched her in the face because she was angry with mother for taking her phone away and grounding her. E.K. testified that mother had pushed her away to defend herself, but that she had not used any other force. She also testified that the welts and lacerations on her body were from a game she had been playing with her friends after school. She and her friends had been hitting each other with belts for fun.

T.K. denied that mother had asked her to get a belt. She also denied that mother had ever hit her or her siblings with a belt.

The juvenile court found that the version of the incident that E.K. and T.K. gave to law enforcement and the social worker was more credible than their testimony at the hearing. The court stated that E.K. had given three interviews "and she was consistent in

4

those interviews as to what happened. It's only now months after the detention hearing that she is coming into court and saying that she lied about what happened." The court also stated that it was "more likely that the children gave the correct version of the events . . . when it was close in proximity to the time they were being interviewed."

The court reviewed the police and social worker's description of E.K.'s injuries in CPS's detention report, as well as black and white versions of 16 photographs of E.K.'s arms, legs, and back. The court found that E.K.'s injuries were "clearly visible" in the black and white photographs.

Based on this evidence, the court found that E.K.'s injuries were serious enough to establish jurisdiction under section 300, subdivision (a). It ruled that E.K. was a dependent of the court under section 300, subdivision (a) and that E.K.'s siblings were dependents under section 300, subdivision (j). The court returned the children to mother's care and ordered six months of family maintenance services.[3]

## ANALYSIS

Mother contends that the court's section 300, subdivision (a) finding must be reversed because there was insufficient evidence that E.K.'s injuries were severe enough to warrant jurisdiction or that E.K. was at risk of future harm. We disagree.

When reviewing a challenge to the sufficiency of the evidence supporting a juvenile court's jurisdictional findings, "we determine if substantial evidence,

---

[3] The court also found dependency jurisdiction over all the children under section 300, subdivision (b), but that finding is not at issue on appeal.

5

contradicted or uncontradicted, supports them." (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We consider the record as a whole, resolving all conflicts and drawing all reasonable inferences in support of the jurisdictional findings. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.) " 'We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts.' " (*Ibid.*) Thus, in order to succeed on appeal, mother must demonstrate that there is no evidence of a sufficiently substantial nature to support the court's jurisdictional findings. (*Ibid.*)

In order to make a dependency finding under section 300, subdivision (a), the juvenile court must find by a preponderance of evidence that the " 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.' " (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 138.) If a child has suffered a serious injury from an incident of abuse, jurisdiction is proper under section 300, subdivision (a) even without a showing that the child is at risk of future harm at the time of the hearing. (See, e.g., *In re David H.* (2008) 165 Cal.App.4th 1626, 1644.) In the context of corporal punishment with a belt, the court in *In re David H.* found that the bruises, red marks, welts, and lacerations on the child's arms, back, and chest were serious injuries and therefore jurisdiction was proper under section 300, subdivision (a). (*David H.*, at pp. 1629, 1644.)

Here, E.K. suffered similar injuries when mother hit her multiple times with a belt. The record contains 16 photographs of E.K.'s arms and legs, which the social worker described as showing "numerous welts and lacerations from the leather part of the belt and from the metal buckle." The record also contains a police officer's description of

6

E.K.'s injuries as "welts and lacerations to her legs, arms and upper back area."  The social worker, who saw E.K.'s injuries six hours later after "the majority" of the welts had gone down, also observed several lacerations on E.K.'s arms and legs.  The court found that this evidence demonstrated that E.K.'s injuries were serious enough to authorize jurisdiction under section 300, subdivision (a).  Because we do not reweigh the evidence on appeal, we uphold the court's finding.  (See, e.g., *In re Lana S.*, *supra*, 207 Cal.App.4th at p. 103.)

Mother contends that *In re Isabella F.*, *supra*, 226 Cal.App.4th 128 requires us to find that E.K.'s injuries were not serious enough to warrant jurisdiction under section 300, subdivision (a).  We reject this argument because the court's conclusion in *Isabella F.* was based on distinguishable facts.  In that case, the mother had struggled with her daughter when she would not get ready for school, inflicting small scratches on the child's face.  (*Isabella F.*, at pp. 131-132.)  Photographs of the child's injuries showed a "gouge mark" on her earlobe and a "small cut" on her cheekbone, both of which were "consistent with a fingernail injury."  (*Id.* at p. 132.)  At the jurisdiction hearing, the mother's counsel argued that the child's injuries did not constitute serious physical harm, but counsel "stopped short of asking the juvenile court to dismiss the petition, apparently based on the mother's desire to receive services."  (*Id.* at p. 135.)  The appellate court found that the fingernail scratches on the child's face were not serious injuries for purposes of section 300, subdivision (a) jurisdiction.  (*Isabella F.*, at pp. 138-139.)  The court also found that the child was not at risk of suffering serious physical harm in the

future because the child had reported that the altercation with her mother was an "isolated incident." (*Id.* at p. 139.)

The holding of *In re Isabella F.* is inapplicable here because E.K.'s injuries were more serious and extensive than fingernail scratches and because the belt incident was not isolated. E.K. and her siblings reported that mother would beat them when they were in trouble and that she had hit them with a belt before.

We also reject mother's attempts to analogize E.K.'s injuries to the injury of the older sibling in *In re Mariah T.* (2008) 159 Cal.App.4th 428. In that case, the appellate court found that the bruises the younger sibling sustained on his stomach and hands after his mother hit him with a belt constituted serious physical harm. (*Id.* at p. 438.) The court suggested, but did not hold, that the single "red line on [the older sibling's] back" might not constitute serious physical harm. (*Ibid.*) Mother's argument is unavailing because the multiple welts and lacerations that E.K. suffered are not comparable to a single red mark; rather, E.K.'s injuries are more like the bruises and welts that constituted serious physical harm in *David H.* (*David H.*, *supra*, 165 Cal.App.4th at pp. 1629, 1644.)

We find similarly unavailing mother's arguments that E.K.'s injuries were not serious because E.K. was 13 years old and because she "instigated the incident." First, while the fact that a child is an infant can weigh in favor of finding an injury to be serious (see *In re Mariah T.*, *supra*, 159 Cal.App.4th at p. 438), the converse is not true. That is, there is no rule that the older the child, the more serious the injury must be in order to establish jurisdiction under section 300, subdivision (a). Second, the court did not find E.K.'s testimony that she instigated the altercation with her mother to be credible;

8

instead, it found that the evidence more strongly supported a finding that mother initiated the abuse. As stated, we do not reweigh the evidence on appeal but rather uphold the juvenile court's findings where there is evidence to support them. (*In re Lana S.*, *supra*, 207 Cal.App.4th 94 at p. 103)

We conclude there was substantial evidence to support the juvenile court's finding that E.K. suffered serious physical harm and we uphold the court's jurisdictional findings.[4]

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

---

**4** We need not address mother's contention that jurisdiction over E.K.'s siblings under section 300, subdivision (j) is improper because that contention depends on a conclusion that jurisdiction over E.K. was improper.