Filed 10/16/15  In re Juan P. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JUAN P., a Person Coming Under the Juvenile Court Law. | B261829 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JUAN P.,<br><br>      Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK07238) |

APPEAL from orders of the Superior Court of Los Angeles County, Marquerite Downing, Judge.  Reversed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

INTRODUCTION

Juan P., Sr., appeals from the jurisdiction and disposition orders of the juvenile court declaring his six-year-old son, Juan P., Jr., a dependent of the court under Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The child lives with mother and visits father every other weekend pursuant to a family law order giving the parents joint legal and physical custody. When mother picked the child up from father's house on a Sunday in August 2014, she noted a red mark around the child's neck. Asked what happened, father explained that the child was playing with the dog when the leash got caught around the child's neck.

The parents took the child to the hospital. Dr. Ludlow treated the child for a " 'neck abrasion' " and declared him to be " 'fine.' " Dr. Ludlow found the child did not appear ill and presented no acute distress. He had no peripheral edema or ecchyrmosis. His airway was normal and clear. In all respects, the child appeared normal, alert, and his mood and behavior were normal, "playful [and] happy." Suspicious, mother filed a report with the Sheriff. She also obtained a restraining order to protect the child. However, until this incident, mother never had any concerns about child abuse or neglect in father's home.

The record contains numerous accounts of what caused the mark on the child's neck. Mother reported overhearing the child telling mother's attorney's receptionist that father tied a belt around his neck and choked him. Mother also overheard the child telling his half sibling that father choked him with a belt because he ate Jello that he was not supposed to eat and did not listen. Mother claimed that the child was scared of father and did not want to visit him anymore. The child showed the social worker a belt and explained that " 'my dad ties the belt on my neck and pulled me back' " because " 'he got mad because I ate all the food.' " The child was always able to breathe. He told the social worker that he was scared of and angry at father and did not want to see father

---

[1]    All further statutory references are to the Welfare and Institutions Code.

" 'ever ever never again.' " The child told a sheriff's detective that the dog's leash became tangled around his neck when the child was playing with the dog. The child was unable to distinguish between the truth and a lie when tested by the social workers.

Father's description of the events to the detective and the social worker remained unchanged: the child became entangled in the dog's leash. The dog's leash is a rope. A paternal uncle reported watching the child attempt to tie the dog to a door and became entangled in the rope. Father immediately responded to the child's screams and soothed him.

In the opinion of the detective, the marks were consistent with a rope. The emergency room record indicates that the child suffered minimal, sharp pain. The injury was caused by a dog leash that got caught around the child's neck. Dr. Miller, the forensic examiner at the Martin Luther King, Jr. HUB suspected physical abuse by father. He opined that the marks on the child's neck were consistent with a belt being put around his neck and pulled from behind. The injuries would be highly unlikely to have resulted from a dog leash. The doctor found the child's report to be credible.

The parents have no criminal record, no history of domestic violence, and no prior reports of any kind of abusive behavior by father. No charges were filed against father for the incident.

The Department filed a petition under section 300, subdivision (a) only, alleging that father physically abused the child by choking him with a belt and inflicting marks on the child's neck.

The juvenile court declared father was the presumed father and ordered the child detained from him. The court initially awarded father monitored visits but liberalized that order to unmonitored day and overnight visits, every other weekend, as had been the family's schedule before the Department's involvement.

At the adjudication hearing, the dependency investigation social worker testified that she found father's explanation of the incident to be credible and believed the petition should be dismissed. The only reason the Department did not recommend dismissal of

3

the petition was that the forensic examiner believed that the marks were consistent with physical abuse.

As father speaks Spanish, the record was confusing about whether the child was choked by a leash or a rope. Father testified that his Chihuahua has a nine foot leash measuring a quarter inch in diameter. On the day of the incident, the child was following the dog and trying to tie the rope to the dog. The child tied one end of the rope to a door and maneuvered the other end around his waist, but without realizing it, he put the rope around his neck. As the dog passed by, the rope tightened. Father was standing about five feet away from the boy. Father consoled the child and called the police to ask what to do.

At the close of the hearing, the juvenile court found that if father did not abuse his child, then he was neglectful. The court noted that the words "rope" and "belt" were used interchangeably. The court took a break to "figure out what language conforms to the evidence," but stated it was going to sustain the petition. After the break, the court amended and sustained a petition under section 300, subdivisions (a) and (b) alleging that father "physically abused the child by choking the child with a *belt* inflicting marks to the child's neck *or in the alternative* while the child was under the care and supervision of the father . . . choked himself playing with a *rope*." (Italics added.)

As for disposition, the court declined to order the child to be placed with father but left the custody arrangement established by the family law court unaltered, namely that the parents have joint legal and physical custody, with mother having primary custody and father having weekend overnight visits. Father timely appealed.

## CONTENTIONS

Father contends the jurisdiction and disposition orders were made in error. The Department concedes the orders should be reversed.

## DISCUSSION

Subdivision (a) of section 300 authorizes juvenile court jurisdiction over any child who "has suffered, or there is a substantial risk that the child will suffer, *serious physical*

4

*harm* inflicted nonaccidentally upon the child by the child's parent or guardian." (Italics added.)

Subdivision (b) of section 300 authorizes dependency jurisdiction when, "[t]he child has suffered, or there is a substantial risk that the child will suffer, *serious physical harm or illness*, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ."  (§ 300, subd. (b)(1), italics added.)

Hence, both subdivisions (a) and (b) of section 300 require that, before the juvenile court may exert jurisdiction over a child, there be evidence indicating that the child has suffered, or is at substantial risk of suffering *serious physical harm* or illness. " 'In determining what constitutes a substantial risk of serious physical harm [under section 300, subdivision (b)], some general guidance may be drawn from subdivision (a) . . . ."  (§ 300, subd. (a).)'  [Citation.]"  (*In re Alysha S*. (1996) 51 Cal.App.4th 393, 399, quoting *In re Rocco M*. (1991) 1 Cal.App.4th 814, 823.)  A substantial risk of serious future injury may be found "based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent . . . which indicate the child is at risk of serious physical harm."  (§ 300, subd. (a).)

*In re David H*. (2008) 165 Cal.App.4th 1626 determined that striking a seven-year-old child with a belt and cord, leaving "bruises, linear red marks, welts, and broken skin . . ." constituted serious physical harm under section 300, subdivision (a).  (*In re David H*., at pp. 1644-1645.)  The court in *In re Mariah T*. (2008) 159 Cal.App.4th 428, held striking a three-year-old child on the stomach and forearms and leaving deep purple bruises constituted serious physical harm.  (*Id*. at pp.438-439; see also *In re N.M*. (2011) 197 Cal.App.4th 159, 169 [child hit numerous times on ribs and on back with broom and pipe].)

Here, the petition contains no allegations, and the record contains no evidence, that the child has suffered, or is at substantial risk of suffering *serious physical harm* or

5

illness from the alleged choking to justify sustaining the petition under either subdivisions (a) or (b) of section 300. Dr. Ludlow in the Emergency Department found the child was suffering no acute distress and did not appear ill. He had no peripheral edema or ecchyrmosis. The child's airway was normal and clear. In all respects, the child appeared normal, alert, and his mood and behavior were normal, "playful [and] happy." The child stated he never lost his breath. All that the sustained petition alleges is that the child sustained "marks." This does not amount to the serious physical harm or illness required to declare a child a dependent under subdivisions (a) and (b) of section 300, regardless of whether father's conduct was intentional or neglectful. (*In re David H.*, *supra*, 165 Cal.App.4th at pp. 1644-1645; *In re Mariah T.*, *supra*, 159 Cal.App.4th at pp. 438-439.)

Another reason jurisdiction is not warranted here is that there are no allegations or evidence indicating that " 'the acts may continue in the future. [Citations.]' " (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.) "[E]vidence of past events may have some probative value in considering current conditions. But under section 300, subdivision (b) this is only true if circumstances existing *at the time of the hearing* make it likely the children will suffer the same type of 'serious physical harm or illness' in the future. This is so because under subdivision (b) a child may be considered dependent 'only so long as is necessary' to protect the child from risk of suffering serious physical harm or illness. For this reason, 'the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm, "[t]here must be some reason to believe the acts may continue in the future." ' " (*In re Janet T.* (2001) 93 Cal.App.4th 377, 388, fns. omitted.)

Here, although the juvenile court did not appear to believe father, there was ample evidence in the record from other witnesses showing that father acted appropriately. Father immediately responded to the child's screams and soothed the child. The child was always able to breathe. Father accompanied the child to the hospital and even called the police for advice. Father has no criminal record, no history of violence, and no prior history of any kind of abusive behavior. There is no record of repeated inflictions of

6

injuries on any child that would indicate this child is at risk of any harm, let alone serious physical harm. Even mother stated that until this incident, she had no concerns about child abuse or neglect in father's home. No charges were filed against father for this incident. The treating physician declared the child to be " 'fine.' " The record shows that this was a one-time incident and there is no evidence that it will recur. There is simply no reason for state interference in this family.

Father also challenges the disposition order. However, because we reverse the jurisdiction order, the disposition order is automatically reversed.

DISPOSITION

The orders appealed from are reversed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

JONES, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.