Filed 6/22/16  In re R.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.G., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E064181 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1500074) |
| v. | OPINION |
| E.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne S. Cho, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman, and Carole Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant E.H. (Mother) appeals from the juvenile court's jurisdictional and dispositional findings as to her 17-year-old son R.G. She contends that (1) there was insufficient evidence to support the juvenile court's jurisdictional findings under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b)(1), and (2) the court's dispositional orders were not authorized by the statutory scheme rendering those orders void or voidable. For the reasons explained below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Riverside County Department of Public Social Services (DPSS) on March 12, 2015, when a referral was received alleging general neglect and physical abuse of then 16-year-old R.G. and his half sister, then 10-year-old H.H.[2] The referral alleged that R.G. was observed with a burn or abrasion to his right hand, and when asked what happened, R.G. reported his mother had burned him with a lighter. The reporting party stated that R.G. was participating in an activity at school involving fire and R.G. became afraid when the lighter was lit to conduct the project. R.G. asserted that he was afraid of fire because his mother burned him and repeated this statement over and over.

R.G. was interviewed by a social worker at his high school on March 18, 2015. The social worker was informed that R.G. was diagnosed as autistic with mild intellectual

---

[1] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] H.H. is not a party to this appeal.

2

ability. The social worker noted that although R.G. was 16 years old at the time, he "presented as a child in a much younger development range." The social worker assessed R.G.'s ability to distinguish between the truth and a lie and he was able to articulate and demonstrate his understanding. R.G. stated that he lived with his mother, stepfather (W.H.), and his half sister H.H. R.G. reported seeing his mother hit W.H. He also said that his mother kicked him in the groin area and that she had punched him with her fist. When the social worker asked him about any marks, bruises or injury on his body, R.G. held out his right hand and a small pinkish color circular mark was observed on the hand. R.G. said that his mother was mad at him and burned him with her cigar. At the conclusion of the interview, law enforcement was called.

A joint assessment was thereafter conducted by the social worker and a police officer. During the assessment, R.G. stated Mother had burned him with her yellow "cigar lighter." He also stated that he started crying, yelling and screaming after being burned. R.G. denied receiving any medical care. He stated that he did not feel safe at his home because of Mother and that he was afraid of Mother because she had burned him.

Mother was called and interviewed at the school. She reported that she learned of R.G.'s injury a week prior when the school nurse called her and that she did not know how it occurred, but R.G. told her that he got the injury from falling off his scooter. She also stated that by the time she saw the mark it was already healed and the scab had fallen off. Mother further asserted that R.G. could have gotten the injury from anywhere as he disappears from their home on a daily basis, leaving at 6:00 a.m. and returning all hours of the night; that she was unable to stop R.G. from leaving as he becomes combative; and

3

that she has no idea of his whereabouts until he returns. Mother initially denied smoking, reporting she had quit a long time ago, and also denied owning a cigarette lighter. She also said that no one in the house smoked. As the investigation continued, she recanted her initial statements and admitted to occasionally smoking cigars. She, however, remained firm that she did not burn R.G. with her cigar, claiming she never smoked around her children. Mother did not know why R.G. would say she burned him and reported that R.G. was a liar with a history of making things up. She further asserted that R.G. was a very difficult child and that he physically beats her up, leaving marks and bruises all over her body. She also stated R.G. beats up H.H. and that H.H. was afraid of R.G.

H.H. stated that Mother smoked cigars every day. She believed R.G. received his injury when he fell off his scooter but denied ever seeing him fall off his scooter. She admitted to hearing R.G. crying, screaming, and yelling in his room but denied knowing what happened. She had never seen Mother hurt R.G. but had seen R.G. hurt her mother. She also claimed that R.G. hit her and Mother and that she was afraid of R.G. W.H. also denied knowledge of any burns to R.G. He admitted that he smoked cigarettes and Mother smoked cigars. He also reported ongoing problems with R.G., noting R.G. was out of control and he leaves the house and returns after midnight. He also stated R.G. was very combative and physically abused Mother and H.H. and that he was afraid for them. W.H. showed the social worker several holes in the walls that W.H. claimed were caused by R.G. and reported that when R.G. cannot have his way, he becomes violent and punches things, throws things, or attacks.

4

Mother had a prior child welfare history involving general neglect, physical abuse, and sibling at risk. In October 2005, it was reported that R.G. was observed with a bruise on his left ear. The referral was, however, closed as unfounded. Another referral was received in December 2006 alleging general neglect of the children after H.H. was pushed into the swimming pool accidentally. The referral also stated that the home had dog feces; that H.H. was seen running in the feces; and that the home was unsafe. This referral was also closed as unfounded.

At the conclusion of the investigation, a safety plan was developed. Mother agreed to allow R.G. to be placed with his maternal aunt and to cooperate with DPSS until a Child Abuse and Neglect Assessment (CAN) could be completed. DPSS allowed H.H. to remain in her parent's home.

R.G. underwent the CAN examination on March 20, 2015 with Dr. Mark Massi. Dr. Massi found the injury to R.G.'s hand was "consistent with that of a cigar burn." The results also indicated that R.G. suffered from physical abuse, not neglect, and that the relationship between R.G. and his mother appeared unhealthy. R.G. was thereafter taken into protective custody and formally placed with his maternal aunt.

On March 24, 2015, DPSS filed a petition on behalf of the children pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (g) (no provision for support against R.G.'s father),[3] and (j) (abuse of sibling).

---

[3] At that time, the whereabouts of R.G.'s father, T.G. (father), were unknown. It was later determined Father resided in New York. Father is not a party to this appeal.

The detention hearing was held on March 25, 2015. Mother appeared, and Father appeared by telephone. The court formally detained R.G. as to Mother, and Mother was provided with supervised visitation with R.G.

When the social worker met with R.G. again on April 7, 2015, the injury to R.G.'s hand had healed and the original injury was only "slightly visible." R.G. reported that he did not get the injury to his hand from a burn but from falling off his scooter. The social worker then spoke with R.G. regarding his promise to tell her the truth and reassessed R.G.'s understanding as to the difference between a truth and a lie. R.G. demonstrated again that he knew the difference. The social worker then asked R.G. if he was telling the truth or a lie about falling off his scooter. R.G. stated he was telling her "a lie" and reported several times that his mother burned him with her cigar. When the social worker asked R.G. if anyone had told him to tell the social worker he fell off his scooter, R.G. responded "yes," but would not tell the social worker who had asked him to lie. The maternal aunt reported that R.G. was adjusting to her home. She also noted that R.G. was not capable of distinguishing the difference between the truth and a lie, even though R.G. had answered the social worker's questions.

W.H. was also interviewed again and said he was home but not in the room when R.G. and Mother "got into it." He reiterated that R.G. lies and noted that "no one knows the truth." He did not believe Mother burned R.G. He also reiterated that R.G. kicks, punches, and beats his mother and that R.H. is violent and out of control and is afraid for Mother and H.H. R.G.'s father also found it hard to believe Mother had burned R.G., noting he was "shocked" that Mother would burn R.G and that Mother had never been

6

violent. Father also stated that Mother had prevented him from visiting with R.G.; that he paid monthly child support for R.G.; and that he desired custody of his son and was willing and able to take care of him.

The social worker also spoke with Doug Christiansen, Consumer Service Coordinator for Inland Regional Center (IRC). Christiansen said that R.G. frequently lied and that he did not believe Mother had harmed R.G. When asked about the frequency of his contact with the family, Christiansen said he primarily spoke with Mother by telephone related to services or problems and visited with the family in-person only once a year.

R.G.'s Individual Education Plan (IEP) dated October 17, 2014, indicated that R.G. was able to initiate conversation with peers and adults with good speech intelligibility and adequate sentence structure. R.G. got along with his peers and staff and was described as a very social person who enjoyed interacting with his friends and staff. The IEP also noted R.G. was a very happy person at school and always tried to do his best.

On June 29, 2015, the court granted DPSS's request to allow R.G. to visit with his Father in New York from June 29, 2015 through July 12, 2015. This visit reportedly went "extremely well." During a home visit by a New York social worker, R.G. was observed to be "happy" and reported "things were good." The New York social worker observed that an existing relationship and bond existed between R.G. and his Father. At a hearing in April 2015, R.G. expressed enthusiasm in seeing his father and reported "it was the best day." R.G. had recognized his father upon contact, hugged him, and

7

expressed that he loved him and was happy to see him. Father reported that he was ready and willing to assume custody of R.G. Father had already made arrangements for mental health services R.G. required and for R.G. to attend a school that serviced children with autism and special needs if R.G. was placed in his care.

The contested jurisdictional/dispositional hearing was held on July 13 and 30, 2015. At that time, several witnesses testified, including R.G. In relevant part, Dr. Massi testified that he was "[r]easonably certain" R.G.'s injury was consistent with being burned with a cigar, cigarette, or cigarillo. Dr. Massi also clarified that even if R.G. had not disclosed his mother had burned him, he "would have still concluded that the appearance of the lesion is most consistent with a burn" and that he "would still have concern about how that occurred."

R.G. testified that his time with his father and stepmother in New York was "good"; that he wanted to stay with his mother and visit his father; that he did not want to live with his maternal aunt because she was "mean"; and that he had actually burned his own hand with a cigar. Upon questioning by the court, R.G. stated that Mother smoked cigars; that he loved his mother; that Mother had accidentally burned his hand; and that sometimes Mother gets mad at him and kicks him. R.G. later stated that the injury was caused by falling off his scooter. However, when questioned as to how long his mother's cigar touched his hand, R.G. stated "[a] lot" and that he cried out in pain. Following R.G.'s testimony, the court noted that R.G. had consistently stated his mother's cigar caused the burn.

8

A speech pathologist, who had met R.G. on two occasions at the request of the maternal aunt, also testified. In pertinent part, she believed that R.G. was 100 percent unreliable because he gave inconsistent, irrelevant, and illogical responses, and that he had difficulty distinguishing between fantasy and reality. R.G.'s respite care provider for almost 10 years testified that she had never observed anything to suggest Mother was abusing R.G.; that R.G. had never told her anyone was hurting him; that R.G. tends to tell different stories; and that R.G. told her the injury to his hand occurred when he fell at school. The social worker testified that she believed Mother posed a threat to R.G.'s safety and well-being, not only due to the cigar burn but also due to Mother's inability to control R.G. and their unhealthy relationship. The social worker also stated that she was recommending R.G. be placed with Father because he was a nonoffending parent and that it was not uncommon to place a child with a nonoffending parent even if the child had never lived with the nonoffending parent.

Mother testified that she had cared for R.G. since his birth; that she had support from respite care, IRC, and in-home services; that she did not have difficulty controlling R.G.; and that neither she nor H.H. were afraid of R.G. She explained that R.G. did not disappear from her home all day on a daily basis and that he often went to the homes of his friends for a few hours.

Following argument, the juvenile court found allegations a-1 and b-1 true and allegations b-2, g-1, and j-1 not true. The petition as to H.H. was dismissed. The court thereafter heard testimony from Father and his wife. Following argument as to disposition, the court awarded sole physical and legal custody of R.G. to Father and

9

visitation for Mother. The court also ordered the dependency case terminated with family law orders and Father's counsel to prepare the orders. This appeal followed.

II

DISCUSSION

A. *Jurisdictional Findings*

Mother argues there is insufficient evidence to support the juvenile court's jurisdictional findings pursuant to section 300. We disagree.

As to allegation a-1, the petition alleged: "The child has suffered non-accidental harm and continues to be at risk of harm in that the child sustained a burn mark to his right hand which was inflicted by his mother." As to allegation b-1, the petition stated: "The mother neglects the health, safety and well[-]being of the child, [R.G.] in that he sustained a lighter burn to his right hand inflicted by his mother. In addition, the child reports being scared of his mother as a result. Furthermore, the mother continues to deny that she caused said injury, thus continuing to place the child[] at risk of harm."[4]

" ' "A dependency proceeding under section 300 is essentially a bifurcated proceeding." [Citation.] First, the court must determine whether the minor is within any of the descriptions set out in section 300 and therefore subject to its jurisdiction.' [Citation.] ' "The petitioner in a dependency proceeding must prove by a preponderance of the evidence that the child who is the subject of a petition comes under the juvenile court's jurisdiction." ' [Citation.] 'The basic question under section 300 is whether

_____

[4] At the jurisdictional hearing, DPSS amended allegation b-1 to omit "lighter" and to state "burn."

10

circumstances at the time of the hearing subject the minor to the defined risk of harm.' "
(*In re A.S.* (2011) 202 Cal.App.4th 237, 243-244.)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) We review the entire record to determine whether substantial evidence supports the juvenile court's findings, resolving all conflicts and drawing all reasonable inferences in support of the findings. (*Ibid.*) Those inferences "must be reasonable and logical; 'inferences that are the result of mere speculation or conjecture cannot support a finding.' " (*In re B.T.* (2011) 193 Cal.App.4th 685, 691.) "We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts. The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 135-136.)

The juvenile court asserts jurisdiction over the children, not the parents. If sufficient evidence supported jurisdiction based on one parent's conduct, it was proper for the court to assert jurisdiction, irrespective of the other parent's conduct. (§ 302, subd. (a); *In re James C.* (2002) 104 Cal.App.4th 470, 482.) Similarly, if substantial evidence supports findings related to any of the asserted bases for jurisdiction, we will affirm the juvenile court's jurisdictional order. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

11

A child is within the jurisdiction of the juvenile court under subdivision (a) of section 300 when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a).) "[A] court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm." (*Ibid*.) This "permissive language" "merely sets forth scenarios in which the statute may apply." (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 725.)

For purposes of subdivision (a) of section 300, " 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury." (§ 300, subd. (a).) "[P]arents of common intelligence can discern what injuries fall within" the scope of that subdivision. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438.)

Correspondingly, a child is within the jurisdiction of the juvenile court under subdivision (b) of section 300 when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . ." (§ 300, subd. (b).) "The child shall continue to be a dependent child pursuant to [subdivision (b) of section 300] only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (§ 300, subd. (b)(1).)

As the California Supreme Court has observed, "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Subdivisions (a) and (b) of section 300 also encompass circumstances creating a "substantial risk" of specified harm. " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.*, at p. 773; see § 300.2 [the purpose of dependency law].) The focus of section 300 is to avert harm to the child. (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 535-536.) The purpose of section 300 is "to limit court intervention to situations in which children are threatened with serious physical or emotional harm" as a result of their parent's conduct. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 303.)

In regard to determination of jurisdiction under subdivision (a) of section 300, Mother argues there is no evidence the injury R.G. sustained was inflicted nonaccidentally, noting that although R.G. stated his mother burned him, he never said Mother did so intentionally or deliberately. We find Mother's claim unpersuasive. R.G. consistently stated Mother burned him with a cigar. He told the reporting party, the social worker, law enforcement, Dr. Massi, and the court that Mother had burned him. He also stated that Mother burned him because she was angry at him and that he was afraid of Mother because she had burned him. He also told the court the cigar touched his hand "a lot" and that he cried out in pain. He also reported that he started crying, yelling, and screaming after being burned and his stepfather pulled his mother into the hallway. H.H. corroborated this statement, reporting that she heard R.G. screaming and

13

yelling in his room. The CAN examination concluded R.G.'s injury was the result of physical abuse and not neglect. Mother initially denied smoking or owning a lighter. She later changed her response and said she occasionally smoked cigars but not near her children. H.H., however, reported that Mother smoked daily. W.H. also reported that Mother smoked cigars and that he had a gold lighter. Mother was adamant that she did not burn R.G. with a cigar and never claimed she may have accidentally.

Based on R.G.'s statements, the fact Mother smoked cigars and tried to initially conceal it, the CAN examination, and Dr. Massi's testimony, the juvenile court could reasonably infer that Mother nonaccidentally burned R.G. on his hand with a cigar. Evidence of a single incident of serious physical harm to a child may be sufficient for the juvenile court to assume jurisdiction under section 300, subdivision (a). (See *In re J.K.* (2009) 174 Cal.App.4th 1426, 1439; *In re Mariah T.*, *supra*, 159 Cal.App.4th at p. 438.) The evidence is sufficient to show that Mother burned R.G. on his hand long enough to leave a burn mark and did so "nonaccidentally." (§ 300, subd. (a).) The court impliedly rejected Mother's explanations of R.G.'s injury and we cannot reweigh the evidence.

Mother also argues there is no evidence R.G.'s injury constituted serious physical harm. Section 300, subdivision (a), does not define " 'serious physical harm.' " (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 138.) It only provides, "For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury." (§ 300, subd. (a).) "Although there may be an 'I know it when I see it' component to this factual determination [of what constitutes serious physical harm] . . . parents of common

14

intelligence can discern what injuries fall within its reach." (*In re Mariah T.*, *supra*, 159 Cal.App.4th at p. 438.)

Case law suggests that serious physical harm may be found where physical discipline causes more than temporary redness, for example, where it causes substantial bruising or laceration. In *In re Mariah T.*, *supra*, 159 Cal.App.4th at page 438, the court did not resolve whether striking an eight-year-old on the back and leaving a red mark constituted serious physical harm, but did determine serious physical harm occurred where the parent struck a three-year-old child with a belt on the stomach and forearms, leaving deep purple bruises. In *In re David H.* (2008) 165 Cal.App.4th 1626, 1645, the court found serious physical harm where a seven-year-old child was struck with a belt or a cord leaving welts, bruises, and broken skin. In *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1472, pinching a child in anger, causing bruising that lasted four to 11 days and pain to the child, supported a finding the child was at risk of serious physical harm. Here, R.G.'s burn resulted in a burn mark lasting about a month. The referral was received on March 12, 2015, after the reporting party observed a burn or abrasion on R.G.'s hand. When the social worker met R.G. on March 18, 2015, she saw a small pinkish color circular mark on R.G.'s hand. The injury was "slightly visible" when the social worker met with R.G. on April 7, 2015.

Mother contends that *In re Isabella F.*, *supra*, 226 Cal.App.4th 128, requires us to find that R.G.'s injuries were not serious enough to warrant jurisdiction under section 300, subdivision (a). We reject this argument because the court's conclusion in *Isabella F.* was based on distinguishable facts. In that case, the mother had struggled

15

with her daughter when she would not get ready for school, inflicting small scratches on the child's face. (*Isabella F.*, at pp. 131-132.) The mother admitted to spanking the child, but denied hitting her face and claimed that any scratches would have been accidental. (*Id.* at p. 132.) Photographs of the child's injuries showed a "gouge mark" on her earlobe and a "small cut" on her cheekbone, both of which were "consistent with a fingernail injury." (*Ibid.*) At the jurisdiction hearing, the mother's counsel argued that the child's injuries did not constitute serious physical harm, but counsel "stopped short of asking the juvenile court to dismiss the petition, apparently based on mother's desire to receive services." (*Id.* at p. 135.) The appellate court found that the fingernail scratches on the child's face were not serious injuries for purposes of section 300, subdivision (a) jurisdiction. (*Isabella F.*, at pp. 138-139.) The court also found that the child was not at risk of suffering serious physical harm in the future because the child had reported that the altercation with her mother was an "isolated incident." (*Id.* at p. 139.)

The holding of *In re Isabella F.* is inapplicable here because R.G.'s injury was more serious and extensive than fingernail scratches. Moreover, Mother never accepted culpability for the injury and continued to deny that she burned R.G., either intentionally or accidentally. Furthermore, while the cigar burn was the most serious incident of abuse, R.G. also reported that Mother had kicked him in the groin area and punched him in the past.

We find R.G.'s burn injury qualifies as "serious physical harm." This is an injury that any parent of common intelligence would recognize as serious physical harm. (See *In re Mariah T.*, *supra*, 159 Cal.App.4th at p. 438.) It went beyond the "reasonable and

age-appropriate spanking to the buttocks" not resulting in serious physical harm excluded from the scope of the subdivision. (§ 300, subd. (a).) Mother is essentially asking us to reweigh the evidence, which is beyond our authority. Because the substantial evidence standard of review requires that we " 'accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact,' " (*In re A.S.*, *supra*, 202 Cal.App.4th at p. 244) we conclude that the evidence is sufficient to sustain the juvenile court's findings as to allegation a-1.

Having found substantial evidence to support a finding of jurisdiction based on section 300, subdivision (a), we need not address Mother's contention that there is insufficient evidence to support a finding of jurisdiction based on section 300, subdivision (b). (*In re I.J.*, *supra*, 56 Cal.4th 766, 773 [" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' "]; see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492; *D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1127; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875.) Accordingly, we conclude substantial evidence supports the juvenile court's jurisdictional findings.

17

B.     *Dispositional Orders*

Mother also argues that reversal of the juvenile court's "purported" dispositional orders is required because the court's orders were not authorized by the statutory scheme thereby rendering those orders void or voidable.

Here, the juvenile court did not expressly declare R.G. a dependent of the court pursuant to section 360, subdivision (d).  The court also failed to make removal findings under section 361 prior to placing R.G. with his father pursuant to section 361.2.  Although the better practice is to express each and every finding and to explain the grounds for such findings on the record, we conclude the lack of explicit findings does not compel reversal.

Section 360 provides the juvenile court with several options once it has determined that a child is a person described under section 300.  Section 360, subdivision (d), provides that the juvenile court may "order and adjudge the child to be a dependent child of the court," if it finds that the child is a person described by section 300.  Here, the court found R.G. to be a child described by section 300, and sufficient evidence as set forth in section II.A., *ante*, supports such a finding.  As such, the court impliedly adjudged R.G. a dependent of the court.  Indeed, Mother acknowledges that an order declaring the child a dependent of the court can be implied here.

Turning to the removal findings, some provisions of dependency law expressly require the juvenile court to set forth the facts supporting its decision.  One such provision is section 361, which concerns removal from parental custody.  (§ 361, subd. (d) ["court shall state the facts on which the decision to remove the minor is

18

based"]; see, e.g., *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.) Another is section 361.2, which governs placement with a noncustodial parent. (§ 361.2, subd. (c) ["court shall make a finding either in writing or on the record of the basis for its determination"]; see, e.g., *In re V.F.* (2007) 157 Cal.App.4th 962, 973, superseded by statute on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 58.)

"Failure to make the required findings [is] error." (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1218.) But reversal is not warranted if the error is harmless. (See *id.* at p. 1219.) The error is harmless if "it is not reasonably probable such findings, if made, would have" resulted in the outcome sought by the appellant. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1137, overruled on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.) In other words, Mother must demonstrate a reasonable probability that, in the absence of error, the lower court would have reached a decision more favorable to her. Otherwise, any error by the court is harmless. (See, e.g., *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303 [failure to make detriment finding was harmless].)

Moreover, as case law recognizes, the requisite findings may be implied in a proper case. (*In re Corienna G.* (1989) 213 Cal.App.3d 73, 83 [permanency planning order; former § 366.25, subd. (d)]; *In re Andrea G.* (1990) 221 Cal.App.3d 547, 554 [same]; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 838 [termination of visitation; former § 361, subd. (a)].) Conversely, there are circumstances in which appellate courts decline to imply required findings. (See, e.g., *In re V.F.*, *supra*, 157 Cal.App.4th at p. 973 [observing that "the better practice is to remand" for a detriment determination

under § 361.2, subd. (a)]; *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1830 [remanding for a detriment determination under § 361.2, subd. (a)]; *In re Kevin N.* (2007) 148 Cal.App.4th 1339, 1344-1345 [remanding for a detriment determination under § 361.5, subd. (e)(1)].)

"By its terms, section 361 applies to a custodial parent, while placement with a noncustodial parent is to be assessed under section 361.2." (*In re D'Anthony D.*, *supra*, 230 Cal.App.4th at p. 303.) Section 361, subdivision (c), provides in relevant part: "A dependent child shall not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of . . . . [¶] (1) . . . a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, . . ." Section 361.2, subdivision (a), provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

In this case, the court's error was in failing to make express findings under section 361, subdivision (a), before proceeding to the section 361.2 findings. Rather than first finding clear and convincing evidence of a "substantial danger" to the child's physical

health, safety, protection, or physical or emotional well-being of the child under section 361, subdivision (c)(1), it found clear and convincing evidence that placement with Father would not be detrimental to R.G. under section 361.2.

Nonetheless, the court's error is harmless because substantial evidence supports removal of R.G. from Mother's custody under section 361, subdivision (c). In deciding whether there is a reasonable probability of the lower court reaching a result more favorable to Mother than it did when it expressly found clear and convincing evidence to support removal under section 361.2, "we can neither ignore the similarity between these statutes' mandatory findings, nor disregard the evidence supporting the court's" lack of detriment finding concerning placement with Father. (*In re D'Anthony D.*, *supra*, 230 Cal.App.4th at p. 303; see, e.g., *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1507-1508 [Applying the best interests standard and placing child in long-term foster care without considering detriment under section 361.2 was harmless error where the record contained substantial evidence to support a detriment finding.].)

"Before the court may order a minor physically removed from his or her parent, it must find, by clear and convincing evidence, the minor would be at substantial risk of harm if returned home and there are no reasonable means by which the minor can be protected without removal. (§ 361, subd. (c)(1).) A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent." (*In re Diamond H.*, *supra*, 82 Cal.App.4th 1127, 1136.) Although the standard for removal under section 361 is clear and convincing evidence in juvenile court, the appellate court reviews the juvenile

21

court's findings for sufficiency of evidence. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) Furthermore, it is the duty of the juvenile court to determine the credibility of the witnesses. (*In re Marco S.* (1977) 73 Cal.App.3d 768, 781.)

In this case, R.G. repeatedly stated his mother burned him because she was angry. R.G. also stated he was afraid of Mother. He further asserted that Mother had previously kicked and punched him and that he also hit Mother. Mother, W.H., and H.H. corroborated R.G.'s statements in regard to hitting Mother. H.H. also stated that she was afraid of R.G. W.H. further reported that R.G. was out of control; that he was combative when he did not get his way; and that W.H. was afraid for Mother and H.H. due to R.G.'s uncontrollable behavior. Indeed, W.H. appeared to be very frustrated with R.G. and the situation, and Dr. Massi described R.G.'s relationship with his mother as unhealthy. Mother had also reported to the social worker that she could not control R.G.; that R.G. left the home at all hours; and that he was combative.

Despite Mother's initial statements and statements made by R.G., W.H., and H.H., at the time of the jurisdictional/dispositional hearing, Mother denied that she could not control R.G. or that R.G. hit her and H.H. or that she burned R.G. The record shows that Mother's relationship with R.G. was unhealthy; that the home environment was unstable for R.G.; and that physical abuse would likely reoccur given R.G.'s volatility in the home. Moreover, Mother failed to acknowledge any culpability. Clear and convincing evidence shows that R.G. would be at a substantial risk of harm if returned to Mother's custody and there was no reasonable means to protect R.G. without removal. Although W.H. and H.H. appeared to be present in the home when the burn incident occurred, they

22

were unable to stop Mother from burning R.G. with a cigar because she was angry at R.G.

Mother's testimony also supports a concern that abuse of R.G. would likely reoccur if R.G. was not removed from her care. Mother denied burning R.G., either accidentally or intentionally, and claimed the burn incident never occurred or the injury to R.G.'s hand was caused by some other means, despite overwhelming evidence to the contrary. She also minimized R.G.'s combative behavior in the home, or that he hit her and H.H., or that H.H. was afraid of R.G. While we acknowledge the burn incident appears to be a one-time occurrence and that Mother had taken care of R.G.'s special needs, the record shows Mother could no longer control R.G. or her reactions to R.G.'s uncontrollable behavior. We conclude that there was sufficient evidence to support removal of R.G. from Mother's care. Accordingly, any error was harmless.

Although "the better practice would have been for the trial court to have made a required determination on the record, we perceive no practical purpose which would be achieved by" remanding for such findings. (*In re Corienna G.*, *supra*, 213 Cal.App.3d at p. 83; see *In re Andrea G.*, *supra*, 221 Cal.App.3d at p. 554.) This is especially true here as R.G. has turned 18. Moreover, Mother was "not prejudiced by the lack of an express determination." (*In re Corienna G.*, at pp. 84-85; see *In re Andrea G.*, at p. 555.) Mother "knew that the purpose of the hearing was to" consider removal of the child and Father's custody request and dismissal of the dependency. (*In re Andrea G.*, at p. 555.)

III

DISPOSITION

23

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ
_____
P. J.


We concur:


HOLLENHORST
_____
J.


McKINSTER
_____
J.