Filed 3/30/26  In re H.C. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re H.C., a Person Coming Under the Juvenile Court Law. | B343100 |
| _____ | (Los Angeles County Super. Ct. No. 24CCJP01774A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| S.L., | |
| Defendant and Appellant, | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

_____

S.L. (Mother) challenges the juvenile court's jurisdiction findings regarding her son, H.C. (born 2022), contending there was insufficient evidence that Mother's physical abuse and unresolved mental health issues placed H.C. at substantial risk of harm. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Department's Investigation and Dependency Petition*

In May 2024 the Los Angeles County Department of Children and Family Services (Department) received a referral from Mother's therapist. Mother told her therapist that she slapped then-18-month-old H.C. on the face while he slept. She told her therapist she felt severe jealousy toward H.C. and believed P.C. (Father) liked him more than her. After Mother slapped him, H.C. woke up crying, and Mother photographed the redness on his face to remind herself not to do it again. When asked if this had happened before, Mother "only responded that there was a previous incident in which she did something else but would not provide any details as to what she did." Mother also reported that when H.C. cried she ignored him as punishment. She had a history of mental health struggles, including self-harming behavior that led to police involvement in 2022 and incidents of crying uncontrollably for hours or throwing household items.

Mother attended therapy sporadically in 2022 and resumed sessions in 2024 shortly before the referral. According to the therapist's notes, in 2022 Mother described episodes of screaming in a closet as well as struggling with anxiety attacks, anorexia and bulimia; she denied having these symptoms in 2024. The therapist's 2024 notes stated Mother "reported severe guilt

2

regarding not bonding with her child" and "miss[ed] her carefree life before being married and having a baby."  Although Mother had previously been diagnosed with adjustment disorder, the therapist believed the more appropriate diagnosis was "[m]ajor depressive disorder, single episode, severe without psychotic features."

When social workers went to the family's home two days after the therapist's referral, Mother became "very agitated" and emotional, and she refused to let them enter or talk to Father. She later allowed the social workers to do a full-body examination of H.C.  They observed H.C.'s lip was "swollen in the middle . . . and was red" and there was a small scratch on his right cheek.[1] Mother admitted she "lightly slapped" H.C. because she felt jealous that he could sleep while she could not, but she stated H.C. did not wake up.  She denied taking photographs and claimed it was the first time she slapped him.  She also denied frequently losing control of her emotions and crying, but acknowledged feeling depressed about having to go to work rather than staying home with H.C.  Mother stated she felt jealous because she gave all her love to H.C., while H.C. was close to everyone in the family.

---

[1] The next day, a police officer who responded to the family home observed a scab on H.C.'s upper lip, "consistent with him either bumping into something or being slapped" and "did not observe any bruising on him or further injuries besides the scab on his upper lip."

3

Although Mother initially agreed to take H.C. to a medical "Hub"[2] appointment, she later tried to cancel it and yelled at social workers over the phone. She said that if her emotions got out of control and something happened, it would be the Department's fault. She later rescheduled but ultimately canceled again due to "discomfort in her body" and because the Hub location was too far away.

The next day, social workers interviewed Father. He denied that Mother slapped H.C. or had similar incidents in the past. He also denied that Mother cried uncontrollably or that there was any police involvement because of Mother's depression. Father said he and Mother taught H.C. not to cry to get what he wants, but would soothe H.C. if he did not stop crying after "a moment." He explained H.C. hurt his mouth because he was active and had grabbed a plastic box that fell on his face. Father took H.C. for a Hub examination that same day.

The Hub report found an "indeterminate cause" for the scab on H.C.'s lip and noted a small scratch on his right check. It also documented a red mark on his ear and redness with a bump on his forehead, which Father attributed to H.C. hitting his head on the corner of the table.

Both grandmothers described H.C. as active and prone to minor accidental injuries. The paternal uncle said Mother was very gentle with H.C. and did not have emotional outbursts.

In June 2024 the court authorized a warrant removing H.C. from Mother and released him to Father. That same month the Department filed a petition under Welfare and Institutions Code

---

[2] The Los Angeles County Medical Hub clinics provide medical assessments and care for children who are involved with the Department.

4

section 300, subdivisions (a) and (b)(1).[3]  The petition alleged: Mother physically abused H.C. by striking him while he slept, leaving redness and swelling on his lips, a scratch on his cheek, a scab on his lip, redness on his ear, and a bump and redness on his forehead (count a-1); Father failed to protect H.C. from Mother's abuse (count b-1); Mother suffered from "mental and emotional problems including a diagnosis of Major Depression, Severe without psychotic features, Adjustment Disorder with depressed mood and Binge Eating Disorder," and has experienced "episodes of screaming inside a closet, suffering from anxiety attacks, struggling with eating disorders, anorexia and bulimia," as well as jealousy of H.C., which rendered her incapable of providing H.C. with regular care and supervision (count b-2); and Father failed to protect H.C. from Mother's mental and emotional problems (count b-2).

Later in June the court returned H.C. to the home of both parents on the conditions that both grandmothers live at home, Mother not be left alone with H.C., and the family cooperate with unannounced home visits.

When interviewed in July 2024 Mother admitted pushing H.C.'s face while he slept but denied using physical punishment. She stated she sometimes let H.C. cry briefly to avoid reinforcing attention-seeking behavior, as advised by his pediatrician.

Mother denied having major depressive disorder but acknowledged crying at night when overwhelmed.  In a mental health evaluation, she reported that although she was very happy after H.C.'s birth, she had struggled with anxiety, stress, and mild depressive symptoms when she returned to work.

---

[3]     Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

5

Mother resumed individual counseling with a new therapist in late September 2024 and attended three sessions by early November. She reported the therapist did not believe she needed to be seen regularly, but the therapist was reliant on Mother's self-reports and did not have access to the information from the dependency case. She similarly reported she had seen a psychiatrist who said she was fine and did not need to return for any mental health treatment; however, the psychiatrist did not have any of the reports from the dependency case. Mother did not disclose to the psychiatrist having any significant psychiatric history and identified her recent dependency case as the "problem" she was facing.

By November the parents had attended a total of 13 weekly Family Preservation sessions. The parents met one of three goals and had made "significant progress" on the remaining two. Family Preservation determined it was appropriate to terminate the services because the family had made significant progress in addressing their goals.

B. *The Court's Jurisdiction and Disposition Findings*

At the November 2024 jurisdiction hearing, minor's counsel joined in Mother and Father's arguments in support of dismissing the petition, arguing there was no current risk to H.C. The court sustained counts a-1 and b-1 as alleged. As to physical abuse, the court applied section 355.1[4] and found H.C.'s injuries would

---

[4] Section 355.1, subdivision (a), provides: "Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the

6

"ordinarily not be sustained except as a result of unreasonable or neglectful acts or omissions of the parent who has the care and custody of the child." The court also found Mother's slap caused the injuries to H.C.'s face and lips. The court relied on the social worker's observations of H.C.'s injuries, Mother's admission that she slapped him while he slept due to her jealousy, and the evidence that Mother had difficulty with anger management and emotional regulation. The court rejected the argument that the incident was isolated and cited the "multiple reports of Mother's motivation behind her behaviors towards her young son—that she wished to punish him for favoring his father over her, that she was jealous of the child going to his father."

The court amended count b-2 by striking the diagnoses of adjustment disorder and binge eating disorder, and the allegations concerning Mother screaming in a closet, suffering from anxiety attacks, and struggling with eating disorders. It then sustained the amended count, finding Mother had "not yet addressed the underlying mental health issues that have caused her to react inappropriately" to H.C. The court found Mother's statements about jealousy of H.C. demonstrated unresolved mental health issues that Mother continued to deny. The court also relied on the Department's observations that Mother became agitated, yelled, and acted erratically during the investigation. It

---

result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, that finding shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300."

also noted Family Preservation services did not address mental health.[5]

At the bifurcated disposition hearing in December 2024 the juvenile court ordered family maintenance services. The court ordered Mother to complete a parenting program, submit to drug testing upon reasonable suspicion, participate in play therapy with H.C., engage in Family Preservation services, participate in individual counseling, undergo a psychiatric evaluation, and take all prescribed medication. H.C. remained in the parents' custody.

Mother timely appealed.

In May 2025 the juvenile court terminated jurisdiction with H.C. released to both parents.

## DISCUSSION

Under section 300, subdivision (a), the juvenile court may assert jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." A parent's use of inappropriate physical force supports jurisdiction under section 300, subdivision (a). (See *In re D.M.* (2015) 242 Cal.App.4th 634, 641; *In re A.E.* (2008) 168 Cal.App.4th 1, 3 [substantial evidence supported jurisdiction findings when a parent struck her son with hard objects, leaving bruises"]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1644-1645 [jurisdiction proper under subdivision (a) where the mother used a belt, cord, and ruler and left marks and broken skin]; *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438-439 [jurisdiction

---

[5] The court also sustained count b-1, finding Father failed to protect H.C.

proper under subdivisions (a) and (b) where the mother hit the child with a belt on the stomach and forearms and left bruises].) In general, "[w]hether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of [the] parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.' " (*In re D.M.*, at p. 641.) The juvenile court also may consider the totality of a parent's behavior, including past incidents, to determine whether jurisdiction is appropriate. (*In re D.D.* (2019) 32 Cal.App.5th 985, 995.)

We review jurisdiction findings for substantial evidence—evidence that is " ' "reasonable, credible, and of solid value," such that a reasonable trier of fact could make such findings.' " (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; accord, *In re J.S.* (2021) 62 Cal.App.5th 678, 685.) A "reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206; see *J.S.*, at p. 685.)

Substantial evidence supports the court's finding that there was a substantial risk that H.C. would suffer serious physical harm.[6] Mother admitted she approached her 18-month-old son

---

[6]     Although the juvenile court terminated jurisdiction in May 2025 with joint custody to both parents, Mother's challenge to the

9

and slapped him in the face while he slept.  She did so based on feelings of "severe jealousy"—obviously not in the course of any appropriate disciplinary efforts.  (Cf. *In re Isabella F.* (2014) 226 Cal.App.4th 128, 131-132, 141 [jurisdictional findings reversed where the mother accidentally scratched a 10-year-old's face while trying to discipline her during child's tantrum].)  Although Mother later said H.C. remained sleeping after she hit him, she told her therapist that H.C. woke up crying and his face was red.  Several days after the alleged incident, the social worker observed H.C.'s lip was still swollen and red, and a scab remained on his lip the day after.  Mother also told her therapist that she had done something similar in the past, and the court determined the marks found elsewhere on H.C.'s face and head were caused by Mother.

Mother contends it "would have been a very awkward angle to have even been able to hit the child's cheek because the child was lying down and asleep," and the slap was "necessarily going to be of very limited force."  She also points to evidence in her favor, such as that the responding deputy did not observe H.C. to be in distress, the Hub report concluded the marks were from an "indeterminate cause," and Family Preservation services reported no child safety concerns.  But these arguments challenge how the juvenile court weighed the evidence.  On appeal, we may not " ' " 'reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts.' " ' "  (*In re Miguel J.* (2025)

---

jurisdiction findings is not moot because the petition alleged Mother physically abused H.C.  (See *In re S.R.* (2025) 18 Cal.5th 1042, 1053 [a parent's appeal from a jurisdiction finding of physical abuse is not moot where a sustained allegation would be reportable to the child abuse central index].)

114 Cal.App.5th 635, 647.) Rather, our task is to determine if there is substantial evidence, contradicted or uncontradicted, to support the juvenile court's findings. (See *In re Jayden A.* (2025) 111 Cal.App.5th 1334, 1347; *In re J.N.* (2021) 62 Cal.App.5th 767, 774 [" 'we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw' "].) Given the young age of the child, the fact that Mother slapped him while he was sleeping, and the visible injuries reported by Mother and then observed by the social worker and the responding officer, substantial evidence supports the determination that Mother used inappropriate physical force on the child sufficient to sustain jurisdiction under section 300, subdivision (a).

Even though H.C. did not suffer severe injuries, "the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602; accord, *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) Contrary to Mother's contention, substantial evidence supported the court's determination that the slapping episode was not an isolated occurrence. When Mother's therapist inquired whether it was a one-time event, Mother responded there had been a previous incident but she would not provide any details. Past conduct can support a finding of current risk when the evidence suggests it may continue. (See *In re Cole L.*, at p. 602 ["A parent's ' "[p]ast conduct may be probative of current conditions if there is reason to believe that the conduct will continue." ' "].)

Mother's unresolved mental health issues, extending back to at least 2022, further supported the court's risk finding. She

11

had a diagnosis of severe major depression. She reported jealousy toward her child and had difficulty regulating her emotions. Yet she repeatedly denied having significant mental health problems or needing ongoing treatment. A parent who fails to acknowledge a problem cannot correct it. (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 [" 'One cannot correct a problem one fails to acknowledge' "]; see also *In re M.D.* (2023) 93 Cal.App.5th 836, 858 [" 'in evaluating current risk, court should consider evidence of parent's current understanding of and attitude toward the past conduct that endangered a child' and evidence that the behavior is unlikely to change"].) The court reasonably concluded that, without insight or sustained treatment, H.C. remained at risk.[7]

## DISPOSITION

The jurisdiction findings and disposition order are affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.                    FEUER, J.

---

[7] Because substantial evidence supports count a-1 of the petition, we need not reach the remaining counts. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [court may affirm based on a single valid jurisdictional finding].)